UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEVO, INC.,

   Plaintiff,

v.

SPINZO CORPORATION,

   Defendant.

Civil No. 22-10030

HON. MATTHEW F. LEITMAN
MAG. DAVID R. GRAND

## MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

Spinzo moves to dismiss the First Amended Complaint for lack of personal jurisdiction under Rule 12(b)(2). It respectfully requests an evidentiary hearing on its jurisdictional challenge. *Serras v. First Tenn. Bank Nat. Assn.*, 875 F.2d 1212, 1214 (CA6 1989).

In the first alternative, Spinzo moves to dismiss the First Amended Complaint for insufficient service of process under Rule 12(b)(5).

In the second alternative, Spinzo moves to dismiss each claim in the First Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

***Local Rule Certification.*** On April 12, 2022, counsel for Spinzo informed counsel for Fevo by email of the nature of the motion and the legal bases for it, as required under Local Rule 7.1(a)(2)(A). Fevo declined to concur in the relief requested.

WHEREFORE, for the reasons argued in its brief, Spinzo prays that the Court will grant this Motion and dismiss the action.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  April 12, 2022

JOSEPH E. RICHOTTE  P70902

JOSEPH E. RICHOTTE (P70902)
JENNIFER A. DUKARSKI (P74257)
BARRET R.H. YOUNG (P78888)
201 West Big Beaver Road, Suite 1200
Troy, Michigan 48084
(248) 258-1616
richotte@butzel.com
dukarski@butzel.com
youngb@butzel.com
*Counsel for Spinzo Corporation*

BH3257705.1

– 2 –

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FEVO, INC.,

     Plaintiff,

v.

SPINZO CORPORATION,

     Defendant.

Civil No. 22-10030

HON. MATTHEW F. LEITMAN
MAG. DAVID R. GRAND

**BRIEF FOR DEFENDANT
IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..................................................... II

QUESTIONS PRESENTED ................................................. VII

CONTROLLING OR  MOST APPROPRIATE AUTHORITY........ VIII

ARGUMENT ...................................................................... 1

    I.    Lack of Personal Jurisdiction ...................................... 1

        A.    The Court lacks general personal jurisdiction over Spinzo ..................................................... 2

        B.    The Court lacks limited personal jurisdiction over Spinzo ..................................................... 3

    II.    Insufficient Service of Process ..................................... 9

    III.    Failure to State a Claim ............................................ 13

        A.    Lanham Act claims ........................................... 13

        1.    The false association claim is not plausibly pleaded because Fevo's allegations fail to show a probability of confusion of affiliation, connection, or association between the services ......................................... 13

        2.    The false advertising claim is not plausibly pleaded because Fevo's allegations do not support misrepresentation of the services ........................... 18

        B.    State-law claims ............................................. 21

        1.    Michigan Consumer Protection Act ........................ 21

        2.    Unfair competition ......................................... 22

CONCLUSION ................................................................. 24

# INDEX OF AUTHORITIES

## *Cases*

*220 Bagley Corp. v. Julius Freud Land Co.*,
  317 Mich. 470, 27 N.W.2d 59 (1947).......................................................7

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000) ...............................................................17

*American Council of Certified Podiatric Physicians & Surgeons v.
  American Bd. of Podiatric Surgery, Inc.*,
  185 F.3d 606 (6th Cir. 1999).....................................................7, 18, 20

*Ammex, Inc. v. McDowell*,
  24 F.4th 1072 (6th Cir. 2022) .............................................................13

*Anderson v. United Plant Guard Workers of Am.*,
  150 F.3d 590 (6th Cir. 1998)...............................................................12

*Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*,
  718 F.2d 1201 (1st Cir. 1983) .............................................................17

*Bellevue Ventures, Inc. v. Morang-Kelly Inv., Inc.*,
  302 Mich. App. 59; 836 N.W.2d 898 (2013) .........................................12

*Beydoun v. Wataniya Restaurants Holding, Q.S.C.*,
  768 F.3d 499 (6th Cir. 2014).....................................................1, 4, 6, 8

*Bird v. Parsons*,
  289 F.3d 865 (6th Cir. 2002)...............................................................2, 3

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
  376 F.3d 615 (6th Cir. 2004)................................................................9

*Cardtoons, L.C. v. Major League Baseball Players Assn.*,
  95 F.3d 959 (10th Cir. 1996)...............................................................14

*Central Wholesale Co. v. Sefa*,
  351 Mich. 17; 87 N.W.2d 94 (1957) .....................................................12

*Deere & Co. v. MTD Prods., Inc.*,
  41 F.3d 39 (2d Cir. 1994) ...................................................................17

*Elvis Presley Enters., Inc. v. Capece*,
    141 F.3d 188 (5th Cir. 1998) ................................................................14

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F.3d 915 (6th Cir. 2003) ...............................................................15

*Federal Express Corp. v. United Parcel Serv., Inc.*,
    765 F. Supp. 2d 1011 (W.D. Tenn. 2010) ..........................................19

*Fonar Corp. v. Tariq Contracting*,
    885 F. Supp. 56 (E.D.N.Y. 1995) ........................................................12

*Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*,
    670 F.2d 642 (6th Cir. 1982) ...............................................................14

*Golden Star Wholesale, Inc. v. ZB Importing, Inc.*,
    531 F. Supp. 3d 1231 (E.D. Mich. 2021) ..............................................7

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) ...............................................................15

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
    270 F.3d 298 (6th Cir. 2001) ...............................................................15

*Homeowners Gp., Inc. v. Home Mktg. Specialists, Inc.*,
    931 F.2d 1100 (6th Cir. 1991) .............................................................14

*In re MCI Telecom. Corp. Compl.*,
    240 Mich. App. 292; 612 N.W.2d 826 (2000) .....................................22

*Jim Fox Enters., Inc. v. Air France*,
    664 F.2d 63 (5th Cir. 1981) .................................................................10

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
    266 F.3d 164 (3d Cir. 2001) ..................................................................7

*Kassa v. Detroit Metro Convention & Visitors Bureau*,
    150 F. Supp. 3d 831 (E.D. Mich. 2015) ..........................................15, 23

*Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*,
    796 F.3d 576 (6th Cir. 2015) ...............................................................18

*King v. Taylor*,
    694 F.3d 650 (6th Cir. 2012) ................................................................9

*MAG IAS Holdings, Inc. v. Schmückle*,
    854 F.3d 894 (6th Cir. 2017) ................................................................3

*Medical Mut. of Ohio v. deSoto*,
    245 F.3d 561 (6th Cir. 2001) ................................................................2

*Metropolitan Alloys Corp. v. State Metals Indus., Inc.*,
    416 F. Supp. 2d 561 (E.D. Mich. 2006) ....................................... viii, 9

*Mr. Vapor Wholesale, LLC v. H.S. Wholesale Ltd.*,
    No. 2:20-cv-10416; 2020 WL 4700825 (E.D. Mich. Aug. 13, 2020) ....... 2

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ..............................................................16

*Osmose, Inc. v. Viance, LLC*,
    612 F.3d 1298 (11th Cir. 2010) ..........................................................19

*Parks v. LaFace Recs.*,
    329 F.3d 437 (6th Cir. 2003) ..............................................................14

*S.H.A.R.K. v. Metro Parks Serving Summit Cty.*,
    499 F.3d 553 (6th Cir. 2007) ....................................................3, 10, 11

*Sawyer v. Lexington-Fayette Urban Cty. Govt.*,
    18 F. Appx. 285 (6th Cir. 2001) ...........................................................9

*Schneider v. Hardesty*,
    669 F.3d 693 (6th Cir. 2012) ................................................................1

*Serras v. First Tenn. Bank Nat. Assn.*,
    875 F.2d 1212 (6th Cir. 1989) ..............................................................1

*Service Jewelry Repair, Inc. v. Cumulus Broad., LLC*,
    145 F. Supp. 3d 737 (M.D. Tenn. 2015) ..............................................19

*SFS Check, LLC v. First Bank of Del.*,
    774 F.3d 351 (6th Cir. 2014) ................................................................2

*Slobin v. Henry Ford Health Care*,
    469 Mich. 211 (2003) .................................................................. 21, 22

*Southern Mach. Co. v. Mohasco Indus., Inc.*,
    401 F.2d 374 (6th Cir. 1968) ............................................................ 4

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) .......................................................... 1

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763; 112 S.Ct. 2753; 120 L. Ed. 2d 615 (1992) ..................... 13

*Upper Peninsula Power Co. v. Village of L'Anse*,
    334 Mich. App. 581; 965 N.W.2d 658 (2020) ....................................... 22

*W.W.W. Pharm. Co., Inc. v. Gillette Co.*,
    984 F.2d 567 (2d Cir. 1993) ........................................................... 17

*Welsh v. Gibbs*,
    631 F.2d 436 (6th Cir. 1980) ............................................................ 2

*Wynn Oil Co. v. Thomas*,
    839 F.2d 1183 (6th Cir. 1988) ......................................................... 14

### Statutes

15 U.S.C. §1125 ............................................................................. 14, 18

Business Corporations Act, R.S.C. 1985, c. C-44, s. 121(a) (Can.) ............. 10

Mich. Comp. Laws §600.705 .................................................................. 3

Mich. Comp. Laws §600.715 .................................................................. 3

Mich. Comp. Laws §445.902 ............................................................. ix, 21

Mich. Comp. Laws §445.903 ................................................................. 21

Mich. Comp. Laws §450.1531 ............................................................... 11

### Rules

Fed. Rule Civ. Proc. 4 ........................................................................ 12

Fed. Rule Civ. Proc. 4(k)(1) ........................................................... 3

Rule 7.1(d)(1) (ED Mich. 2020) .................................................... 1

**_Treatises_**

Restatement (Third) of Agency § 2.03 ........................................ 12

## QUESTIONS PRESENTED

I.    May the Court exercise personal jurisdiction over Spinzo?

II.   If so, has Fevo properly served process, such that the Court has acquired personal jurisdiction over Spinzo?

III.  If so, has Fevo stated a claim upon which relief can be granted?

# CONTROLLING OR
# MOST APPROPRIATE AUTHORITY

## I.    Lack of Personal Jurisdiction

*MAG IAS Holdings, Inc. v. Schmückle,*
    854 F.3d 894 (6th Cir. 2017)...................................................................3

*Medical Mut. of Ohio v. deSoto,*
    245 F.3d 561 (6th Cir. 2001)..................................................................2

*Schneider v. Hardesty,*
    669 F.3d 693 (6th Cir. 2012)...................................................................1

*Serras v. First Tenn. Bank Nat. Assn.,*
    875 F.2d 1212 (6th Cir. 1989)................................................................1

*SFS Check, LLC v. First Bank of Del.,*
    774 F.3d 351 (6th Cir. 2014)...................................................................2

*Southern Mach. Co. v. Mohasco Indus., Inc.,*
    401 F.2d 374 (6th Cir. 1968)...................................................................4

*Welsh v. Gibbs,*
    631 F.2d 436 (6th Cir. 1980)...................................................................2

## II.    Insufficient Service of Process

Fed Rule Civ. Proc. 4(h)(1)(B) .....................................................................12

*Bridgeport Music, Inc. v. Rhyme Syndicate Music,*
    376 F.3d 615, 623 (6th Cir. 2004) ..........................................................9

*King v. Taylor,*
    694 F.3d 650, 655 (6th Cir. 2012) ..........................................................9

*Metropolitan Alloys Corp. v. State Metals Indus., Inc.,*
    416 F. Supp. 2d 561, 563 (E.D. Mich. 2006) ..........................................9

*Sawyer v. Lexington-Fayette Urban Cty. Govt.,*
    18 F. Appx. 285, 287 (6th Cir. 2001) ......................................................9

## III.    Failure to State a Claim

15 U.S.C. § 1125(a)(1) ................................................................ 14, 18

Mich. Comp. Laws § 445.902(g) ...................................................... 21

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    237 F. 3d 198 (3d Cir. 2000) ................................................... 17

*American Council of Certified Podiatric Physicians & Surgeons* v. *American
    Bd. of Podiatric Surgery, Inc.*, 185 F. 3d 606 (CA6 1999)............. 7, 18, 20

*Ammex, Inc. v. McDowell*,
    24 F. 4th 1072 (6th Cir. 2022) ............................................... 13

*Astra Pharm. Prods, Inc. v. Beckman Instruments, Inc.*,
    718 F. 2d 1201 (1st Cir. 1983) ............................................... 17

*Cardtoons, L.C. v. Major League Baseball Players Assn.*,
    95 F. 3d 959 (10th Cir. 1996) ................................................ 14

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F. 3d 915 (6th Cir. 2003) ................................................ 15

*Federal Express Corp. v. United Parcel Serv., Inc.*,
    765 F. Supp. 2d 1011 (W.D. Tenn. 2010) ..................................... 19

*Frisch's Restaurants, Inc.* v. *Elby's Big Boy of Steubenville, Inc.*,
    670 F. 2d 642 (CA6 1982) ..................................................... 14

*Hensley Mfg. v. ProPride, Inc.*,
    579 F. 3d 603 (6th Cir. 2009) ................................................ 15

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*,
    270 F. 3d 298 (6th Cir. 2001) ................................................ 15

*Homeowners Gp., Inc. v. Home Mktg. Specialists, Inc.*,
    931 F. 2d 1100 (6th Cir. 1991) ............................................... 14

*In re MCI Telecom. Corp. Compl.*,
    240 Mich. App. 292; 612 N.W.2d 826 (2000) ................................. 22

*Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*,
    796 F.3d 576 (6th Cir. 2015) ................................................................ 18

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) ................................................................ 16

*Parks v. LaFace Recs.*,
    329 F.3d 437 (6th Cir. 2003) ................................................................ 14

*Slobin* v. *Henry Ford Health Care*,
    469 Mich. 211; 666 N.W.2d 632 (2003) ......................................... 21, 22

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763; 112 S.Ct. 2753; 120 L. Ed. 2d 615 (1992) .................... 13

*Upper Peninsula Power Co. v. Village of L'Anse*,
    334 Mich. App. 581; 965 N.W.2d 658 (2020) ...................................... 22

*W.W.W. Pharm. Co., Inc. v. Gillette Co.*,
    984 F.2d 567 (2d Cir. 1993) ................................................................. 17

*Wynn Oil Co. v. Thomas*,
    839 F.2d 1183 (6th Cir. 1988) .............................................................. 14

Spinzo Corporation respectfully submits this brief in support of its motion to dismiss the Amended Complaint ("**FAC**"). Rule 7.1(d)(1) (ED Mich. 2020).

## ARGUMENT

### I.   Lack of Personal Jurisdiction

The burden rests with the plaintiff to establish that the district court has personal jurisdiction over the defendant. *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014).

When personal jurisdiction is decided on papers, the plaintiff must make a prima facie showing of personal jurisdiction. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). Although the court must consider the pleadings and affidavits in the light most favorable to the plaintiff, the plaintiff cannot rest on its pleadings; it must set forth by affidavit or otherwise specify facts showing the court has jurisdiction. *Serras v. First Tenn. Bank Nat. Assn.*, 875 F.2d 1212, 1214 (6th Cir. 1989). The court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

A "defendant who alleges facts to defeat jurisdiction has recourse to the court's discretionary authority to hold an evidentiary hearing if he disputes the plaintiff's factual assertions." *Ibid.* When the court holds an evidentiary hearing or allows discovery on jurisdiction, it should consider the facts offered by both parties, and the plaintiff must persuade the court by a preponderance of the evidence that it possesses personal jurisdiction over the defendant. *SFS Check,*

*LLC v. First Bank of Del.*, 774 F.3d 351, 356 (6th Cir. 2014); *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980).

Fevo contends that the Court has two types of subject-matter jurisdiction over this action: federal question and diversity jurisdiction. FAC ¶ 45, ECF No. 15, PageID.141–142. When subject-matter jurisdiction rests on a federal question, the personal jurisdiction inquiry is the same as it is for diversity jurisdiction unless a federal statute provides for nationwide service of process on that claim. Compare *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (stating the rule for federal-question cases by reference to the forum state's long-arm statue and the due process standard), with *Medical Mut. of Ohio v. deSoto*, 245 F.3d 561, 567–68 (6th Cir. 2001) (holding that nationwide service statutes permit the exercise of personal jurisdiction based on national contacts, not merely contact with the forum state). The federal statute at issue—the Lanham Act—does not authorize nationwide service, *Mr. Vapor Wholesale, LLC v. H.S. Wholesale Ltd.*, No. 2:20-cv-10416; 2020 WL 4700825, at *2 (E.D. Mich. Aug. 13, 2020), so the general rule governs.

## A.    The Court lacks general personal jurisdiction over Spinzo.

Fevo did not allege that the Court possessed general personal jurisdiction over Spinzo.[1] Accordingly, Fevo forfeits this basis for personal jurisdiction.  See

---

[1]    First, Fevo alleges that the Court has personal jurisdiction over Spinzo through the combination of Rule 4(k)(1) and Mich. Comp. Laws §§ 600.705 and 600.715(1). FAC ¶46, ECF No. 15, PageID.142. Under Rule 4(k)(1), "[s]erving a summons … establishes personal jurisdiction over a defendant … who is subject to the jurisdiction of a court of general jurisdiction in the state where

*S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 564 (6th Cir. 2007) (recognizing that a litigant forfeits an argument it fails to present).

### B.    The Court lacks limited personal jurisdiction over Spinzo.

Limited personal jurisdiction over a defendant exists "if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird*, 289 F.3d, at 871 (cleaned up) (federal question); *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (diversity). Because Michigan's long-arm statute extends to the limits imposed under the federal constitution, "the two questions become one." *Schmückle*, 854 F.3d, at 899 (citation omitted). The exercise of personal jurisdiction satisfies due process if all three elements of the *Southern Machine* test are met: (*i*) Spinzo must have purposefully availed itself of the privilege of acting or causing a consequence in Michigan; (*ii*) the

---

the district is located." Fed. Rule Civ. Proc. 4(k)(1). As explained below, service of the summons was ineffective in this case. Argument II, *infra*. But putting the ineffective service aside, Fevo invokes Mich. Comp. Laws §§ 600.705 and 600.7015(1) as bases for why Michigan courts of general jurisdiction would have personal jurisdiction over Spinzo. FAC ¶46, ECF No. 15, PageID.142. Both of those statutes, however, concern *limited* personal jurisdiction, not *general* personal jurisdiction. Mich. Comp. Laws §§ 600.705 and 600.715(1).

Second, Fevo alternatively argues that the Court has personal jurisdiction over Spinzo under Rule 4(k)(2). FAC ¶46, ECF No. 15, PageID.142. Personal jurisdiction under that rule fails for two reasons. For Rule 4(k)(2) to apply, Fevo would have had to properly serve a summons on Spinzo; Argument II explains why Fevo failed to do that. Additionally, Rule 4(k)(2) requires that "exercising jurisdiction [be] consistent with the [U.S.] Constitution and laws." Argument I.B explains why the Court exercising personal jurisdiction would not be consistent with the U.S. Constitution.

claim must have arisen from Spinzo's activities; and (*iii*) Spinzo's actions, or the consequences it caused, must have a substantial connection to Michigan so as to make the exercise of jurisdiction reasonable. *Beydoun*, 768 F.3d, at 505 (citing *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Fevo cannot satisfy at least two of the *Southern Machine* elements.

Before turning to the third element of the *Southern Machine* test, Spinzo pauses to correct several untrue factual allegations made by Fevo about Spinzo's contacts in Michigan. Fevo either doesn't understand the business or it is asking the Court to exercise jurisdiction on an erroneous premise.

***Detroit Red Wings.*** Fevo misrepresents the Detroit Red Wings as an active Spinzo client. The team used Formstack for the 2018–2019 season before using Spinzo for the 2019–2020 season. The last ticket sale was March 12, 2020, when the pandemic hit. Spinzo has had no active business with the Red Wings since then—notably, before the LinkedIn posts cited in the First Amended Complaint. In fact, on April 6, 2021, the Red Wings informed Spinzo that it had gone with *Fevo* exclusively. DX-1, Second Decl. of Emmanuel Elmajian ¶7 (Apr. 12, 2022). And Elmajian noted both that Spinzo's last sale for the Red Wings was in March 2020 and that Spinzo lost the business to Fevo. First Elmajian Decl. ¶12, ECF 11-2, PageID.114. Yet Fevo inexplicably tells the Court that the Red Wings are Spinzo's client.

***313 Presents.*** Currently, Spinzo's only client in Michigan is 313 Presents ("**313**"), which hired Spinzo after separate meetings with Spinzo and Fevo. 313 told Spinzo that it was unimpressed after a meeting with Fevo's representatives.

DX-1, Second Elmajian Decl. ¶8. Fevo lost in a head-to-head competition, not because of social media posts.

**Little Caesars.** Fevo misidentifies Little Caesars Arena as a Spinzo client. FAC ¶32, ECF No. 15, PageID.137–138; FAC Exh. D, ECF No. 15-10, PageID. 205. 313 promotes concerts and other events for its customers. One of 313's customers is the Capital Area District Libraries, which organized a trip for library members to *Stars on Ice*, an event held at Little Caesars Arena. FAC Exh. D, ECF No. 15-10, PageID.205. Spinzo supplied software to 313, which used it to power sales for CADL's event. Spinzo did not and has never contracted with Little Caesars Arena. DX-1, Second Elmajian Decl. ¶9.

**Rochester High School.** Fevo misidentifies RHS as a Spinzo client. FAC ¶33, ECF No. 15, PageID.138. 313 promoted a fundraiser for the boys' lacrosse team. FAC Exh. E, ECF No. 15-11, PageID.207. Spinzo supplied the software to 313, which used it to serve RHS. Spinzo did not and has never contracted with RHS. DX-1, Second Elmajian Decl. ¶10.

Reinforcing that Little Caesars and RHS are not Spinzo clients, 313 is the merchant of record for transactions with Little Caesars and RHS, not Spinzo. *Id.*, at ¶¶13–14. The same is true for other clients. *Id.*, at ¶13.

**Arizona Coyotes.** Fevo misidentifies the Arizona Coyotes as a Spinzo client. FAC ¶34, ECF No. 15, PageID.138. Like the Red Wings, the last transaction with the Coyotes was March 12, 2020, when the pandemic hit and before any of the challenged LinkedIn posts. The Coyotes have since moved all their business exclusively to Fevo. DX-1, Second Elmajian Decl. ¶11. And yet Fevo again al-

leges inexplicably that this team is a Spinzo client.

*Tucson Roadrunners.* Fevo also wrongly identifies the Tucson Roadrunners as a Spinzo client. FAC ¶35, ECF No.15, PageID.138. Like the Red Wings and Coyotes, the last transaction with the Roadrunners was March 12, 2020. DX-1, Second Elmajian Decl. ¶12. Spinzo believes that Fevo is currently doing work for the Roadrunners. *Ibid.* If so, this would be a third erroneous representation to the Court.

By addressing these errors, Spinzo does not thereby admit to any of Fevo's other allegations about Spinzo's clients. It does note, however, that the other allegations in the First Amended Complaint do not establish connections with Michigan. For example, Fevo alleges that Spinzo's clients include the National Indoor Soccer League located in the southeast United States, the New England Revolution major league soccer team based in Massachusetts, and the Australian Football League and other non-U.S. companies. FAC ¶¶36–38, ECF No. 15, PageID.139. The *only* tie Fevo makes between these clients and Michigan is Sicheneder, which is insufficient under the *Southern Machine* factors.

To satisfy the second element of the *Southern Machine* test, a plaintiff must show a causal nexus between the defendant's contacts with the forum state *and the claim. Beydoun*, 768 F.3d, at 506–07. Fevo's claims are predicated primarily upon allegedly false and defamatory information that Spinzo allegedly posted online.[2] FAC ¶¶69, 73–74, 76, ECF No. 15, PageID.151, 152–153, 154.

---

[2]   Fevo has notably dropped its defamation claim from the First Amended Complaint. Even so, it continues to characterize statements allegedly made by

Those posts and those platforms do not target Michigan; instead, they are accessible around the world. Yet the conduct Fevo alleges—that Spinzo has an independent contractor who works in Michigan, that Spinzo generically conducts business here, and that Spinzo does business with the Detroit Red Wings—is not causally connected to Fevo's claims.[3] FAC ¶¶20–21, ECF No. 15, PageID.133.

---

Spinzo as "false, defamatory, and disparaging[.]" See, e.g., FAC ¶79, ECF No. 15, PageID.155. As noted in Spinzo's first motion to dismiss, the statements advanced in the pleadings are either not of and concerning Fevo, read out of context, nonfactual hyperbole, and/or true. See ECF No. 11, PageID.97–105.

[3]    Fevo offers one example of allegedly prohibited conduct that targets Michigan: an email from Spinzo to an employee of the Detroit Red Wings. FAC ¶77, ECF No. 15, PageID.154–55. But that conduct involving the Red Wings cannot be a basis for any of Fevo's claims because Fevo—not Spinzo—has the Red Wings' business. DX-1, Second Elmajian Decl. ¶7. See also First Elmajian Decl. ¶11, ECF No. 11-2, PageID.114. Fevo has not alleged that the Red Wings email specifically caused it to suffer an injury. And because the email did not cause an injury, it cannot be the basis for any of Fevo's claims. See *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999) ("*American Council*") ("To state a cause of action for misleading advertisement under the Lanham Act, a plaintiff must establish [among other things] … [that] there is some causal link between the challenged statements and harm to the plaintiff."); *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 180 (3d Cir. 2001) (recognizing that for a false designation claim, a court "must look for an injury that was *caused by* [the alleged] false designation"); *Golden Star Wholesale, Inc. v. ZB Importing, Inc.*, 531 F. Supp. 3d 1231, 1255 (E.D. Mich. 2021) (recognizing that a Michigan Consumer Protection Act "plaintiff must … suffer an injury as contemplated by the statute, namely an injury from a consumer transaction" (citation omitted)); *220 Bagley Corp. v. Julius Freud Land Co.*, 317 Mich. 470, 476–77, 27 N.W.2d 59, 61 (1947) (acknowledging that a Michigan common law unfair competition plaintiff must establish injury).

Second, Spinzo's alleged conduct lacks a substantial connection to Michigan needed to make the Court's exercise of personal jurisdiction over Spinzo reasonable. The third element of the *Southern Machine* test "is a function of three factors: '[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief.'" *Beydoun*, 768 F.3d, at 508 (alterations in original). "Here, even assuming, *arguendo*, that plaintiff['s] interest [favors] a finding of reasonableness, the other two factors weigh heavily against such a finding." *Ibid*. Fevo has not alleged that the facts supporting its claims—i.e., the posting of allegedly false and defamatory information on the internet—were carried out in Michigan. See *id*. See also FAC ¶¶64, 67–76, ECF No. 15, PageID.149, 150–54. Spinzo is not a Michigan corporation and most discovery would involve people and documents located outside of Michigan. See *Beydoun*, 768 F.3d, at 508. See also FAC ¶¶7–9, 20, ECF No. 15, PageID.131, 133. (Fevo's principal place of business is New York and Spinzo's is Canada; only Sicheneder is based in Michigan). Moreover, the Supreme Court has cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *Beydoun*, 768 F.3d, at 508–09 (alteration in original), a dynamic squarely present here. Lastly, Fevo "make[s] no argument whatsoever that in this particular case Michigan has an interest in exercising its jurisdiction." *Id.*, at 509.

Because Fevo fails the *Southern Machine* test, it would violate due process to exercise jurisdiction over Spinzo. Thus, the Court should dismiss this action.

## II.   Insufficient Service of Process

"[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant. And [absent] personal jurisdiction, a federal court is powerless to proceed to an adjudication." *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (cleaned up). The burden rests with the plaintiff to prove that proper service was made. *Sawyer v. Lexington-Fayette Urban Cty. Govt.*, 18 F. Appx. 285, 287 (6th Cir. 2001); *Metropolitan Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006). "Actual knowledge of a lawsuit does not substitute for proper service under [Rule] 4." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004). The Court may refer to record evidence and uncontroverted affidavits to decide whether service was proper. *Metropolitan Alloys*, 416 F. Supp. 2d, at 563.

Fevo alleges that it has performed proper service under Rule 4(h)(1).  This rule allows a plaintiff to serve a foreign corporation in one of two ways: (A) under Rule 4(e)(1), which allows for service in manner authorized under the law of the forum state (the "**state standard**"); or (B) by delivering the summons and complaint to an officer, a managing or general agent, or any other agency authorized by appointment or by law to receive service (the "**federal standard**"). Fed. Rule Civ. Proc. 4(h)(1)(A)–(B). Fevo served Sicheneder. ECF No. 6, PageID.66. Service on Sicheneder was not proper service on Spinzo under either approach.

First, under the federal standard, Fevo relies exclusively on the "officer" option: "Under Fed. R. Civ. P[.] 4(h)(1)[B], service of process may be made on

a foreign corporation … by delivering a copy of the summons and the complaint to an officer." FAC ¶16, ECF No. 15, PageID.132. Fevo does not allege that Sicheneder is a managing or general agent or an agent authorized by appointment or by law to receive service. *Id.*, at ¶¶11–15, PageID.132. It has therefore forfeit any claim of proper service on those bases. *S.H.A.R.K.*, 499 F.3d, at 564. So, whether service on Sicheneder was proper under the federal standard turns on whether she was an officer of Spinzo at the time of service.

Rule 4(h)(1)(B) does not define who qualifies as an officer. Although Fevo contends that vice presidents are considered officers of a corporation under state law and notes that Sicheneder's (marketing) title is Vice President of Sales and Service, FAC ¶¶11–12, ECF No. 15, PageID.131–132, the law of the forum state does not govern service on a foreign corporation under Rule 4(h)(1)(B). Cf. *Jim Fox Enters., Inc. v. Air France*, 664 F.2d 63, 64 (5th Cir. 1981) (holding that a person's status as an "agent" for service under Rule 4(h)(1)(B) is governed by federal law). In the absence of a federal definition, the law of the state of incorporation should govern who qualifies as an officer of a foreign corporation.

Spinzo is a corporation formed under the Canada Business Corporations Act. DX-1, Second Elmajian Decl. ¶3a. Under that Act, corporations are not required to have officers. Subject to the corporation's articles, bylaws, or unanimous shareholder agreement, the directors of a corporation may choose to designate the offices of the corporation, appoint officers to fill those offices, and specify their duties and delegate to them powers to manage the business of the corporation. Business Corporations Act, R.S.C. 1985, c. C-44, s. 121(a) (Can.).

A director may be appointed to any office of the corporation. *Id.*, at s. 121(b). Spinzo has chosen to create only one office—the office of president—and has appointed Elmajian to that office. DX-1, Second Elmajian Decl. ¶3b. The corporation has not created an office of vice president. *Ibid.* Accordingly, Sicheneder is not an officer within the meaning of Rule 4(h)(1)(B).

Second, under the state standard, Fevo relies exclusively on Rule 2.105 (D)(1) of the Michigan Court Rules, which allows a plaintiff to serve a foreign corporation by serving a summons and the complaint on an "officer" or the "resident agent." FAC ¶17, ECF No. 15, PageID.132. Fevo does not allege (and has therefore forfeit under *S.H.A.R.K.*, 499 F.3d, at 564, any argument) that Sicheneder is Spinzo's resident agent—and indeed she is not, First Elmajian Decl. ¶8, ECF No. 11-2, PageID.113. But Fevo does allege that vice presidents are considered officers of a corporation under the Michigan Business Corporation Act. FAC ¶15, ECF No. 15, PageID.132 (citing Mich. Comp. Laws §450.1531(1)). More precisely, however, the Act says that "[t]he officers of a corporation shall consist of a president, secretary, treasurer, and, if desired, a chairman of the board, 1 or more vice-presidents, and such other officers *as may be prescribed by the bylaws or determined by the board.* Unless otherwise provided in the articles of incorporation or bylaws, *the officers shall be elected or appointed by the board.*" Mich. Comp. Laws §450.1531(1) (emphases added). As noted earlier, Sicheneder has not been elected or appointed by Spinzo's board as an officer of the corporation.

Fevo contends that service on Sicheneder was nonetheless proper under the doctrine of apparent authority, citing *Fonar Corp. v. Tariq Contracting*, 885

F. Supp. 56, 59 (E.D.N.Y. 1995), see FAC ¶¶14, 19, ECF No. 15, PageID.132–133,[4] but *Fonar* is distinguishable. The case involved a contract dispute, and the plaintiff served the same person who signed the contract for the defendant with the title of "vice president" under the signature line. The person was not, in fact, the vice president, but the company's president instructed her to so sign. The court held that the defendant could not claim improper service when it had held out the endorser as its vice president on the very contract at issue. Here, in contrast, Fevo does not identify any contract or any Spinzo communication that holds Sicheneder out as a vice president *upon which any of its claims rely*. See generally FAC Exhs., ECF No. 15, PageID.174–243. Indeed, Elmajian allegedly sent the email to the Red Wings, not Sicheneder. FAC Exh. M, ECF No. 15-19, PageID. 231. And Sicheneder has no signing authority; Elmajian has signed all contracts for Spinzo. DX-1, Second Elmajian Decl. ¶5. Fevo is simply trying to seize on a marketing title to avoid performing proper service under the Hague Convention or under the laws of Canada. See Fed. Rule Civ. Proc. 4(f).

---

[4]   To the extent that Fevo relies on *Sicheneder* "hold[ing] herself out to the world" as Spinzo's Vice President of Sales and Service, FAC ¶13, ECF No. 15, PageID.132, it misperceives the doctrine of apparent authority. "Under the federal common law of agency, apparent authority arises in those situations where *the principal* causes persons with whom the agent deals reasonably to believe that the agent has authority." *Anderson v. United Plant Guard Workers of Am.*, 150 F.3d 590, 593 (6th Cir. 1998) (emphasis added). Michigan law accords with the federal standard. *Bellevue Ventures, Inc. v. Morang-Kelly Inv., Inc.*, 302 Mich. App. 59, 65; 836 N.W.2d 898 (2013) (quoting *Central Wholesale Co. v. Sefa*, 351 Mich. 17, 25; 87 N.W.2d 94 (1957)). See also Restatement (Third) of Agency §2.03.

Accordingly, Fevo has not properly served Spinzo, and the Court has not acquired personal jurisdiction over Spinzo, even if the Court were to conclude that it could exercise personal jurisdiction over Spinzo. The Court should therefore dismiss this action, in the alternative, for improper service.

## III.   Failure to State a Claim

When deciding a motion to dismiss a complaint for failure to state a claim, courts view the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and look to see whether those facts state a plausible claim for relief. *Ammex, Inc. v. McDowell*, 24 F.4th 1072, 1079 (6th Cir. 2022). A claim is facially plausible if the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ibid.* Even under this pro-plaintiff standard, none of Fevo's claims passes muster.

### A.   Lanham Act claims

The Lanham Act makes "actionable the deceptive and misleading use of marks and to protect persons engaged in commerce against unfair competition." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68; 112 S.Ct. 2753; 120 L. Ed. 2d 615 (1992) (cleaned up). In doing so, the Act creates two claims: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B). Fevo has not plausibly pleaded either claim.

### 1.   The false association claim is not plausibly pleaded because Fevo's allegations fail to show a probability of confusion of affiliation, connection, or association between the services.

Fevo, relying only on Spinzo's lawful comparative advertisements, fails to

– 13 –

show advertising that creates a confusion among customers as to any association or connection between the two brands. To succeed on a false association claim, a plaintiff must show that it is "likely to cause confusion among consumers as to the affiliation, connection, or association" between the plaintiff and the defendant's goods or services or as to the plaintiff's "participation in the origin, sponsorship, or approval of the defendant's goods or services." *Parks v. LaFace Recs.*, 329 F.3d 437, 446 (6th Cir. 2003) (citation omitted). Consumer confusion occurs when "consumers are likely to believe that the products or services offered by the parties are affiliated in some way," *Homeowners Gp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991), or "when consumers make an incorrect mental association between the involved commercial products or their producers," *Cardtoons, L.C. v. Major League Baseball Players Assn.*, 95 F.3d 959, 966 (10th Cir. 1996) (internal quotation and citation omitted). See also 15 U.S.C. §1125(a)(1)(A).

The mere assertion that confusion might exist or that there is a possibility of confusion isn't enough; Fevo must demonstrate a probability of confusion to meet the likelihood requirement. See *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998); *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1189 (6th Cir. 1988) (a "clear likelihood of confusion" existed because it was "highly probable" that a purchaser would believe a car wax was affiliated with another manufacturer). The threads of confusion here are so weak that Fevo doesn't even allege any of the traditional eight confusion factors. See generally *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).

– 14 –

Instead, Fevo only asserts that Spinzo infringed the Fevo mark during the goodwill campaign where Spinzo assisted in the purchase and donation of masks to hospitals. See FAC ¶¶90–94, ECF No. 15, PageID.159–160. This use, however, is protected by the doctrine of fair use. "In evaluating a defendant's fair use defense, a court must consider whether defendant has used the mark: (1) in its descriptive sense; and (2) in good faith." *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003).

"With respect to the first prong of the 'fair use' defense, 'the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense.'" *Kassa v. Detroit Metro Convention & Visitors Bureau*, 150 F. Supp. 3d 831, 839–40 (E.D. Mich. 2015) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 612 (6th Cir. 2009)). "The original, descriptive primary meaning [of a word or phrase] is always available for use by others to describe their goods, in the interest of free competition." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 319 (6th Cir. 2001) (citation omitted). When "a defendant has used a mark in a non-trademark way," it is sometimes referred to as "nominative or descriptive fair use." *Kassa*, 150 F. Supp. 3d, at 841. This subset of fair use comes into play in situations, as here, where a defendant uses the subject mark to identify the plaintiff's own products and services, not the defendant's:

> [T]his is not the classic fair use case where the defendant has used the plaintiff's mark to describe the defendant's *own* product. Here, the New Kids trademark is used to refer to the New Kids themselves ... [W]here the defendant uses a trademark

> to describe the plaintiff's product, rather than its own, … a
> commercial user is entitled to a nominative fair use defense[.]

*New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).
Notably, Spinzo makes it clear in the ad copy itself that it is allying itself with
its competitor in efforts against Covid-19 by using the trademark to describe
Fevo. See FAC ¶¶90–94, ECF No. 15, PageID.159–160. This show of solidarity describes Fevo; it does not describe Spinzo. Therefore, not only does Fevo fail
to demonstrate the *Frisch's* factors, but it also cannot succeed in demonstrating
infringement where Spinzo made a good-faith descriptive use to help procure personal protective equipment during the pandemic.

Fevo also continues to rely on the use of any white lettering on a black rectangle as being uniquely protected by Fevo and therefore creating confusion or
association in the marketplace. FAC ¶76, ECF No. 15, PageID.154. Although
Fevo makes no direct contention that asking customers to "do the math" has led
to or could lead to any likelihood of confusion, even this wouldn't be enough to
meet the requirements of false association.[5] The "yuck" post contains no reference to "Fevo" and is a comparative advertisement assessing Spinzo's performance against "other solutions" in a field of competitors which include other
"F" named entities like Formstack, which is specifically named in the advertisement. FAC Exh. J, ECF No. 15–16, PageID.224. And the narrative post about

---

[5]    Once again, Fevo has supplied the Court with a downsampled version of
the advertisement. FAC Exh. L, ECF No. 15-18, PageID.229. Once against,
Spinzo supplies a high-resolution version. DX-2, High Resolution Version of Advertisement in FAC Exh. L. See also ECF 11-5, PageID.119.

Spinzo's credit card BIN list gating feature doesn't even mention competitors. FAC Exh. K, ECF No. 15-17, PageID.226.

Moreover, despite Fevo's lack of demonstrative confusion, the presence of Spinzo's trademark in and near a black block makes Fevo's argument even more implausible. See FAC Exh. K, ECF No. 15-17, PageID.227; FAC Exh. L, ECF No. 15-18, PageID.229; DX-2, High Resolution Version of Advertisement in FAC Exh. L. When a company uses its own trademark and company name, any potential for confusion is substantially decreased. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 218–19 (3d Cir. 2000); *W.W.W. Pharm. Co., Inc. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993), receded from on other grounds *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 46 (2d Cir. 1994); *Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1205 (1st Cir. 1983).

Finally, rather than taking steps to cause confusion, Fevo alleges that Spinzo engaged in a "smear campaign" to differentiate the two brands. FAC ¶68, ECF No. 15, PageID.151. Fevo notes that Spinzo even uses the language "[o]n other systems," which clarifies that none of the competitors in the market are asserting origin, sponsorship, or approval by any other competitor. *Id.*, at ¶69, PageID.151. In fact, Fevo's argument is entirely premised on the fact that it believes Spinzo is trying too hard to differentiate itself, which foundationally destroys its argument that the two are associated.

As Fevo cannot support its assertion that there is a probability of confusion on affiliation, connection, or sponsorship, the Court should dismiss Count I.

### 2. The false advertising claim is not plausibly pleaded because Fevo's allegations do not support misrepresentation of the services.

The Lanham Act also forbids "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]" 15 U.S.C. § 1125(a)(1)(B). Claims of misrepresentation must be reasonably targeted as, "[a]bsent a false statement about geographic origin, a misrepresentation is actionable under § 1125(a)(1)(B) only if it misrepresents the characteristics of the good itself—such as its properties or capabilities. The statute does not encompass misrepresentations about the source of the ideas embodied in the object (such as a false designation of authorship)." *Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 590 (6th Cir. 2015) (cleaned up). To state a claim for misleading advertisement under the Lanham Act, a plaintiff must allege: (1) "the defendant has made false or misleading statements of fact concerning his own product or another's"; (2) "the statement actually or tends to deceive a substantial portion of the intended audience"; (3) "the statement is material in that it will likely influence the deceived consumer's purchasing decisions"; (4) "the advertisements were introduced into interstate commerce"; and (5) "there is some causal link between the challenged statements and harm to the plaintiff." *American Council*, 185 F.3d, at 613.

First, Fevo fails to allege statements of fact concerning its product as all the complained-of advertising denotes "other systems" and does not directly reference or imply Fevo, and therefore cannot be false statements about Fevo. Its

first challenge relates to a social media post: "On other systems, buyers must enter all the data into a text field." FAC ¶69, ECF No. 15, PageID.151. "Other systems" does not identify nor imply Fevo's company and cannot sustain a false advertising claim. See generally, *Service Jewelry Repair, Inc. v. Cumulus Broad., LLC*, 145 F. Supp. 3d 737, 746 (M.D. Tenn. 2015) (applying *American Council* to the use of "other jeweler" and finding it too ambiguous to be targeted). Even assuming any ability for customers to infer that Spinzo may be referencing Fevo, "[t]he greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, … the less likely it is that a finding of literal falsity will be supported." *Federal Express Corp. v. United Parcel Serv., Inc.*, 765 F. Supp. 2d 1011, 1017 (W.D. Tenn. 2010) (citation omitted); accord *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309 (11th Cir. 2010) ("As the meaning of a statement becomes less clear … and it becomes susceptible to multiple meanings, the statement is more likely to be merely misleading"). Therefore, the advertisements do not support misrepresentation.

Beyond the term "others," Fevo asserts that "four letter F word" makes a connection to Fevo in Exhibit J. FAC Exh. J, ECF 15-16, PageID.224. See also FAC ¶¶71–72, ECF No. 15, PageID.152. The actual language of the social media post reads "Yuck! Makes you want to scream **** (4-letter 'F' word)." FAC Exh. J, ECF No. 15–16, PageID.224. There is no connection to Fevo here, as a review of the post itself makes it clear that the f-word is one of the seven dirty words you can't say on television. Similarly, in Exhibit K, the advertisement uses the term "Others," not "Fevo." FAC Exh. K, ECF No. 15-17, PageID.227. Ex-

hibits M–O are not advertisements. FAC Exh. M, ECF No. 15-19, PageID.231; FAC Exh. N, ECF No. 15-20, PageID.233–237; FAC Exh. O, ECF No. 15–21, PageID.239–240.

Second, none of the statements are literally false. To sustain its burden, a plaintiff must show "either that the defendant's advertisement is literally false or that it is true yet misleading or confusing." *American Council*, 185 F.3d, at 614. In the case of a literal falsity, "a violation may be established without evidence that the statements actually misled consumers." *Ibid.* In all the comparative advertisements, Fevo and Spinzo are not the only companies operating in the e-commerce sector and other systems indeed require text entry. FAC Exh. J, ECF No. 15-16, PageID.224. In Exhibit K, it is also true that there exist other systems that do not have the referenced credit card promotion capabilities. FAC Exh. K, ECF No. 15-17, PageID.226. Plaintiff has therefore failed to allege any literal false statements.

Even if the challenged advertising is "literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception (i.e., evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product)." *American Council*, 185 F.3d, at 614. Here, Fevo fails to allege any actual deception where consumers perceived the advertisement in a misleading way.

Accordingly, Fevo has failed to plead a plausible false advertising claim under the Lanham Act. The Court should therefore dismiss Count II, as well.

### B.   State-law claims

Apart from First Amendment deficiencies, Fevo's state-law claims are not plausibly pleaded for other reasons too.

#### 1.   Michigan Consumer Protection Act

The MCPA protects "Michigan's consumers by prohibiting various methods, acts, and practices in trade or commerce." *Slobin v. Henry Ford Health Care*, 469 Mich. 211, 215; 666 N.W.2d 632 (2003). Fevo seems to allege that Spinzo violated at least three of the Act's prohibitions. Compare FAC ¶122, ECF No. 15, PageID 165–166, with Mich. Comp. Laws §445.903(1)(a), (1)(b), and (1)(f). But Fevo has missed a critical part of the statute. The conduct listed in §445.903 is only unlawful "in the conduct of trade or commerce." *Slobin*, 469 Mich., at 216. "'Trade or commerce' means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes[.]" Mich. Comp. Laws §445.902(g) (emphasis added). The services at issue here— "collective ticket purchasing services" to businesses in the sports and entertainment sectors, FAC ¶3, ECF No. 15, PageID. 129—are not "for personal, family, or household purposes" at all, much less primarily so. See *Slobin*, 469 Mich., at 216. Instead, they are primarily for business purposes.

For instance, Fevo alleges that its clients include "professional and minor league sports teams; universities; concert, festival, event, and attraction hosts and producers." FAC ¶1, ECF No. 15, PageID.128. And Fevo contends that the parties are "direct competitors in the marketplace" of "sellers of collective ticket purchasing services in the United States." FAC ¶3, ECF No. 15, PageID 129.

Moreover, Fevo asserts that Spinzo offers its services to the Detroit Red Wings. FAC ¶27, ECF No. 15, PageID.136–37. But when, as here, the challenged services are entirely (or even primarily) for business purposes, the MCPA does not apply. See *Slobin*, 469 Mich., at 216.

Fevo's new contention that the statute applies because collective ticket purchasing services "are ultimately used by the consuming public for personal and entertainment purposes," FAC ¶128, ECF No. 15, PageID.166, does nothing to alter the analysis. Fevo offers no plausible reason why the consuming public is misled about the service it receives. Recall that the business model entails Fevo and Spinzo and their competitors selling webservices to *corporate clients* who want to offer their customers collective ticket purchasing options. FAC ¶1, ECF No. 15, PageID.128. From the consuming public's perspective, a platform— good or bad—is merely a means to purchase tickets from the *corporate client*, not from Fevo or Spinzo.

The Court should therefore dismiss Count III for failure to state a claim.

### 2.    Unfair competition

The "doctrine of unfair competition was ordinarily limited to acts of fraud, bad-faith misrepresentation, misappropriation, or product confusion." *In re MCI Telecom. Corp. Compl.*, 240 Mich. App. 292, 312 n. 8; 612 N.W.2d 826 (2000). To sustain such a claim, a plaintiff must allege that there is a probability that individuals were deceived by a defendant's actions or that "such deception will be the natural and probable result of a defendant's acts." *Upper Peninsula Power Co. v. Village of L'Anse*, 334 Mich. App. 581, 598; 965 N.W.2d 658 (2020)

(cleaned up).

Fevo alleges that unauthorized use of its trademark constitutes unfair competition. FAC ¶133, ECF No. 15, PageID.167. Yet the only materials that use Fevo's name include communications with the Detroit Red Wings and the Milwaukee Bucks. FAC Exh. M, ECF No. 15-19, PageID.231, Exh. N, ECF 15-20, PageID.233–37. And the only alleged use of a portion of the Fevo mark was from a post about corporate citizenship. FAC Exh. P, ECF No. 15-22, PageID.242–43.

As to the targeted correspondences, Fevo was referenced in a descriptive and nominative manner to describe the source of the competitive services. Fevo fails to allege that either the Red Wings or the Bucks were deceived or that confusion would be a probable result of the communications.

As to the corporate citizenship post, Fevo complains that Spinzo informed its followers on social media that Spinzo bought masks to donate to the Shriners Children Hospitals during Fevo's campaign and shared a screenshot of the same. There was no misrepresentation and no deception as Spinzo explains that it was able to help in Fevo's campaign out of goodwill. Therefore, Fevo fails to plausibly plead this claim.

Further, Fevo's claim of unfair competition under state law is "analyzed under the same standard as [a] federal trademark infringement claim" and a false designation of origin claim. *Kassa*, 150 F. Supp. 3d, at 841. Therefore, for the reasons noted in Argument III.A, *supra*, including the failure to plead the *Frisch's* factors for likelihood of confusion, Fevo's unfair competition claim is not plausibly pleaded.

– 23 –

## CONCLUSION

For these reasons, the Court should dismiss the First Amended Complaint against Spinzo.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  April 12, 2022

JOSEPH E. RICHOTTE  P70902
_____
JOSEPH E. RICHOTTE (P70902)
JENNIFER A. DUKARSKI (P74257)
BARRET R.H. YOUNG (P78888)
201 West Big Beaver Road, Suite 1200
Troy, Michigan 48084
(248) 258-1616
richotte@butzel.com
dukarski@butzel.com
youngb@butzel.com
*Counsel for Spinzo Corporation*

BH3257705.1

– 24 –